FILED

2012 Feb-23  AM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TERESA KEENER MEHERG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **6:11-CV-01387-VEH** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

Plaintiff Teresa Keener Meherg (hereinafter "Ms. Meherg") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied her application for Social Security Disability Insurance Benefits. Ms. Meherg timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Meherg was a 46-year-old female at the time of her hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 27). She has a high school and

college education.  (Tr. 36).  Her past work experiences include employment as a support staff member of an adult education project and a volunteer services coordinator.  (Tr. 27).  Ms. Meherg claims she became disabled on December 18, 2004, due to bipolar and generalized anxiety disorder, degenerative disc disease, and migraine headaches.  (Tr. 35).  Her last period of work ended in December 2004.  *Id.*

Ms. Meherg filed her application for a period of disability and Disability Insurance Benefits on September 11, 2006.  (Tr. 19).  The claim was denied by the Commissioner on November 20, 2006.  *Id.*  Ms. Meherg filed a timely written request for a hearing on December 18, 2006.  *Id.*  The hearing was held on February 4, 2009.  *Id.*  The ALJ concluded that Ms. Meherg was not disabled and denied her application on March 25, 2009.  (Tr. 28).

Ms. Meherg filed a Complaint on April 25, 2011, which asks this court to review the ALJ's decision.  (Doc. 1). This court has carefully considered the record and finds that this case should be remanded for further development of the record.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

3

Regulations promulgated thereunder.[1]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[1]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2011.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Meherg has not engaged in substantial gainful activity since the alleged onset of her disability on December 18, 2004. (Tr. 21). He also found that Ms. Meherg's bipolar and generalized anxiety disorder and degenerative disc disease are both considered "severe" based on the requirements in Regulations 20 C.F.R. § 404.1520(c) and § 416.920(c). *Id.* The ALJ then held that the medically determinable impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security Regulations. (Tr. 23). The ALJ found that Ms. Meherg's impairments did not meet or medically equal either listing 1.04 for disorders of the spine or listings

5

12.04 and/or 12.06[2] for affective disorders in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.*

The ALJ concluded that Ms. Meherg's impairments prevent her from performing her past relevant work. (Tr. 27).   The ALJ determined that Ms. Meherg retains a residual functioning capacity to perform less than the full range of sedentary work.[3]   (Tr. 24).

The vocational expert testified that Ms. Meherg's past work experiences as a project director, support staff member of adult education, and volunteer coordinator are characterized by the Dictionary of Occupational Titles[4] as "skilled," "light, skilled," and "light, skilled" work, respectively. (Tr. 69-70). The ALJ then considered Ms. Meherg's capacity for sedentary work, her age, her education, and her work experience under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P,

---

[2]This court questions whether the ALJ has substantial evidence to support the determination that Ms. Meherg did not meet the medical equivalence listings of 20 C.F.R. § 404, Subpart P, Appendix 1, 12.04 and 12.06. The ALJ's conclusion rests in large part on whether Ms. Meherg's restrictions were "marked" rather than "moderate," and in light of the erroneous credibility findings of the ALJ discussed *infra*, this court is concerned that similar erroneous negative credibility findings were involved when analyzing the listings. However, the nature of the court's decision on appeal does not require it to reach the listings issue.

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

[4]The Dictionary of Occupational Titles provides different examples of work activities that fall within the residual functioning capacity for medium work.  (Washington, D.C.: U.S. Dept. of Labor, Employment and Training Administration: U.S. G.P.O., 1993).  Available online at: http://www.occupationalinfo.org.

Appendix 2 (hereinafter "grids").  (Tr. 27).

In reliance on the grids, the ALJ concluded that Ms. Meherg was not under a disability at any time through the date of the ALJ's decision and therefore was not eligible for Disability Insurance Benefits under §§ 216(i) and 223(d) of the Social Security Act.

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).[5]  Ms. Meherg asserts that "[t]he evidence in this case is contrary to the Administrative Law Judge's determination that the Plaintiff is not disabled, and the facts of this case have not been accurately portrayed in the Administrative Law Judge's determination."  (Doc. 8 at 19). In its review, this court agrees with Ms. Meherg's assertion and finds that the ALJ's decision was not supported by substantial evidence.

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## I.      The ALJ'S Conclusion That Ms. Meherg Was Not Disabled Is Not Supported By Substantial Evidence.

The court has carefully reviewed the record and finds that this case should be remanded for further development pursuant to the administrative law judge's duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The ALJ "must carefully weigh the evidence, giving individualized consideration to each claim that comes before him [,]" whether it be a medical opinion or a subjective claim. *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). The pain standard "applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires evidence of an underlying medical condition and (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). A claimant's statements about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, medical signs and laboratory findings must depict medical impairments that could reasonably be expected to produce the claimant's alleged symptoms. *See id.*; *see also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir.

1991) (citing *Landry v. Heckler*, 782 F.2d 1551 (11th Cir. 1986)). Even if a claimant meets the pain standard, the ALJ may then evaluate the intensity, persistence, and limiting effects of the alleged symptoms, such as pain. *See* 20 C.F.R. § 404.1529(c)(1). Using this standard in the present case, the ALJ correctly found that medical records depict medical impairments that could reasonably be expected to produce the alleged symptoms. (Tr. 26). However, the ALJ determined that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id*. Under the record as it stands, the evidence is not substantial to support the ALJ's conclusion Ms. Meherg is not disabled and can perform less than the full range of sedentary work because: (A) the ALJ failed to consider "other evidence" in the record regarding Ms. Meherg's pain; (B) the ALJ's negative credibility finding as to the intensity of Ms. Meherg's subjective pain  is not supported by substantial evidence; (C) the ALJ afforded improper weight to the consultative physician's opinion; and (D) the ALJ failed to take into account all of Ms. Meherg's medical problems when deciding residual functional capacity and when posing hypotheticals to the vocational expert. While the court has endeavored to separate the issues into their respective subparts, it recognizes the overlap and interrelated nature of these findings.

9

A.     **The ALJ Failed To Consider "Other Evidence" In The Record.**

The ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). This "other evidence" includes statements made by the claimant in testimony during administrative hearings concerning the claimant's restrictions, daily activities, frequency and intensity of symptoms, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3) and 416.912(b)(3). Caregivers and parents are important sources of testimony since "they usually see you every day" and so can attest to the "effects of your impairment(s) on your activities and how you function on a day-to-day basis." 20 C.F.R. § 416.924a(a)(2). Using these "other evidence" factors, the ALJ must show substantial evidence supporting his attempt to discredit the claimant's pain testimony.  The adjudicator must consider the following:

> [T]he entire case record, including...statements provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record....[the] determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and

the reasons for that weight.

SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (Jul. 2, 1996). Although use of non-medical

evidence is not a requirement, once such testimony is received, it is included as

available evidence and must be considered.[6] As discussed below, the ALJ failed to

take into account all the evidence in the record.

The ALJ neither discussed the extent of the testimony of Ms. Meherg's

husband nor did the ALJ attempt to reject his testimony for lacking credibility.

Several Eleventh Circuit cases confirm that remanding a disability case to more fully

develop the record is appropriate when the ALJ fails to review or, alternatively, fails

to give reasons for rejecting "other" testimony.[7] The only mention by the ALJ of Mr.

Meherg's testimony was regarding his testimony of an episode of decompensation,

accepted by the ALJ as reliable testimony. (Tr. 24). While the ALJ, at least in one

instance, accepted the testimony of Mr. Meherg as credible, the ALJ failed to discuss

Mr. Meherg's other statements about his wife's physical and mental condition. The

---

[6]*See, e.g.*, *Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276 (11th Cir. 2004).

[7]*See Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) (requiring, on remand, the ALJ state weight accorded to each item of impairment evidence and reasons why); *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986) (requiring ALJ to state weight accorded to each item of impairment evidence and reasons for his decision on the evidence); *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985) (holding ALJ did not make clear the weight accorded evidence when ALJ stated he had "carefully considered all the testimony given at the hearing and the documents"); *see also Capps o/b/o K.L.C. v. Astrue*, No. 6:06-CV-01057-VEH (Doc. 13 at 14) (N.D. Ala. Jun. 27, 2007).

11

testimony of Ms. Meherg's husband supports Ms. Meherg's testimony about the severity of her symptoms. For example, Mr. Meherg testified about her condition in manic and depressive states. (Tr. 63). Additionally, he corroborated the fact that Ms. Meherg cannot shop alone due to her inability to manage money. (Tr. 62). He also testified about the severity of her back pain and the limitations caused by her pain. (Tr. 64). Finally, he discussed how his wife's migraines will debilitate her for one to two days, and occasionally the pain will be so severe that "she'll have to go to the hospital and get a shot to just knock her out, just [until] the migraine passes." (Tr. 65). The court finds that the ALJ's failure to consider or reject the foregoing testimony of Ms. Meherg's husband is improper under the applicable Regulations and constitutes reversible error. *See* 20 C.F.R. § 404.1529(c)(3)-(4).

## B. The ALJ's Credibility Finding Is Not Based On Substantial Evidence.[8]

The ALJ may reject a plaintiff's complaints of pain if he finds them not to be credible. *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992). However, if the ALJ discredits a claimant's testimony regarding the severity of her symptoms, that determination must be supported by substantial evidence. *Id.; see also Doughty v.*

---

[8]The following analysis and disposition flow from the undersigned's opinions in *Clemmons v. Astrue*, No. 3:06-CV-1058-VEH (Doc. 22 at 15) (N.D. Ala. Jun. 11, 2007), *Malone v. Astrue*, No. 5:07-CV-2351-VEH (Doc. 11 at 11-12, 22) (N.D. Ala. Jul. 24, 2008), and *Rose v. Astrue*, No. 1:11-CV-01186-VEH (Doc. 10 at 10-12) (N.D. Ala. Nov. 1, 2011).

*Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (the Commissioner's factual findings must be supported by substantial evidence). Furthermore, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [a claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p. Finally, the level of treatment may be one factor for the ALJ to consider, but the ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for a failure to seek treatment. SSR 96-7p, 61 Fed. Reg. at 34,487.

First, the ALJ determined that Ms. Meherg's testimony about the limiting effects of her low back pain and degenerative disc disease were accepted as "only partially credible." (Tr. 26). He based this on the fact that Ms. Meherg was able to "garden as well as perform various household chores." *Id.* Then, he recited Dr. Spruill's findings that Ms. Meherg's lumbar spine was normal upon examination but with increased pain with flexion and extension. (Tr. 443). Dr. Spruill also found a mild disc bulge at the L3-4 level and moderate disc bulge at the L4-5 level. (Tr. 444). With those few facts, the ALJ concluded the diagnosis supported the RFC assessment and felt there was "nothing in the medical evidence of record to substantiate the claimant's allegations regarding the limiting effects of this impairment." (Tr. 26).

It is well established that minimal daily activities will not disqualify a claimant

from disability and will not establish the claimant can perform sedentary work. *Lewis*, 125 F.3d at 1441; *see also Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) (stating that "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity"). Therefore, the ALJ's claims about Ms. Meherg's minimal and sporadic daily activities cannot be a basis for discounting her subjective pain testimony and proving her ability to perform less than the full range of sedentary work. In addition, the ALJ seems to have ignored more negative parts of Dr. Spruill's medical opinion while focusing on parts that fall more in line with the RFC. Unmentioned was the fact that Dr. Spruill diagnosed Ms. Meherg with "chronic low back pain" and noted in his report that conservative treatment had failed to improve her symptoms. (Tr. 444). Dr. Spruill also included in his record that Ms. Meherg had "two epidural injections in 2004," an "SI injection under fluoroscopy on 10/18/06," and then himself administered a "caudal epidural injection under fluoroscopy" on 11/06/06. (Tr. 440, 444). Ms. Meherg was prescribed Lortab and Wygesic, narcotics that are used to treat serious pain. (Tr. 444). Even before seeing Dr. Spruill, Ms. Meherg was diagnosed with chronic back pain by Dr. Janice Hudson, who prescribed an epidural and Lortab to treat her pain. (Tr. 320, 322, 327, 332). The ALJ clearly erred in concluding there was nothing in the record to substantiate the claimant's stated intensity of pain. In contrast, the ALJ's

14

determination that Ms. Meherg can "stand for four of eight hours in the day, sit six of eight hours in a day" (Tr. 24) is truly not supported anywhere in the record; therefore, the ALJ erroneously disregarded Ms. Meherg's back pain.

Second, the ALJ rejected Ms. Meherg's allegations about the intensity and limiting effects of her migraine headaches based on the fact that "a MRI of the claimant's brain was performed on March 18, 2005 and again on February 6, 2006...[with] no significant abnormalities identified at either evaluation." (Tr. 27). Ms. Meherg alleges in her reply brief that she was sent for the MRI not to diagnose migraine headaches, but to rule out any other causes of her headaches. (Doc. 10 at 9). Dr. Potts notes that he ordered a cranial MRI "given the patient's numbness" and also ordered an MRI of Ms. Meherg's acoustic canals. (Tr. 410). This evidence and the fact that Dr. Potts continued, even after normal MRI results, treating Ms. Meherg's migraines, supports her contention that the purpose of the testing was not for diagnosis. (Tr. 412, 416). There is abundant documentation within the medical records of Ms. Meherg's migraines. (Tr. 327-328, 333-335, 400, 403, 404). Even assuming that the ALJ's allegations about the MRIs were valid, the ALJ may not reject the claimant's assertions as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [a claimant's] statements." 20 C.F.R. § 404.1529(c)(2). Therefore, the ALJ incorrectly dismissed Ms. Meherg's

statements of the intensity and limiting effects of her migraine symptoms.

Finally, an ALJ may not draw conclusions based on a person's "failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 61 Fed. Reg. at 34,487. The Social Security Ruling also gave examples of relevant explanations that would make a credibility finding based on lack of medical treatment unacceptable such as avoiding medical treatment due to exacerbation of symptoms during process of seeking medical help, side effects of prescriptions outweighing benefits, or inability to pay. *Id.* In this case, the ALJ questioned Ms. Meherg's credibility based in part on the fact that she failed to get treatment for the four years before September of 2006. (Tr. 26). The ALJ also noted that Ms. Meherg did not require any psychiatric hospitalizations for her mental impairments.

In making his determinations, the ALJ failed to take into account the evidence from the record and further explanation by Ms. Meherg. The record shows that Ms. Meherg sought treatment from Dr. Mohabbat for several months and discontinued because she found the counseling and treatment discomforting and had an extreme allergic reaction to the medication he prescribed. (Tr. 41, 65). There is also testimony that her symptoms were only exacerbated after visiting a health professional. (Tr. 41).

16

There is no indication that the ALJ considered explanations for Ms. Meherg's lapse in treatment similar to the examples given in SSR 96-7. The ALJ concluded that the lapse in time between diagnosis and her 2006 treatment is evidence "contrary to the claimant's allegations regarding the intensity and persistence of her symptoms." (Tr. 26). In reaching his conclusion, the ALJ also failed to consider Ms. Meherg's consultation in early 2005 with Dr. Hudson who diagnosed her with "chronic depression" and prescribed new medication for her illness. (Tr. 322, 327). The ALJ also seems concerned that Ms. Meherg went to Dr. Atkins with the purpose of getting a diagnosis supportive of her decision to apply for disability benefits. Yet, Dr. Atkins suggested she discuss the possibility of seeking disability benefits with her family, and only during her second visit with Dr. Atkins did she confirm she had applied. (Tr. 308, 309). Since the ALJ failed to address Ms. Meherg's explanation for her lapse in treatment, his credibility finding based on that lapse is unwarranted.

### C.    The ALJ Erred When Assigning More Weight To The Consultative Physician's Opinion

The opinion of a treating physician as to the claimant's condition and its medical consequences is entitled to deference absent good cause. *See* 20 C.F.R. §§ 404.1527, 416.927 (1998); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists where the treating physician's opinion is not bolstered by the

17

evidence or where the evidence supports a contrary finding. *Id.* But, where the ALJ refuses to fully credit the claimant's treating physician, his reasons for doing so must be supported by substantial evidence. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). The ALJ found that Ms. Meherg's claims about the "intensity, persistence and limiting effects" of her symptoms were not supported by the record. (Tr. 26). His opinion was based, in part, on the testimony of opinion of Dr. Nuckols, a consultative physician. The ALJ felt Ms. Meherg's claims contradicted Dr. Nuckols's assessment. *Id.* In assigning weight to the medical opinions of record, the ALJ placed more weight on that of Dr. Nuckols than on the opinions of Dr. Atkins and Dr. Phoha, two of Ms. Meherg's treating physicians. *Id.* The ALJ gives some reasons for affording the most weight to the medical testimony of Dr. Nuckols, but, for the reasons below, the court finds that the ALJ's decision lacks good cause for accepting the opinions of Dr. Nuckols over the opinions of Ms. Meherg's treating physicians.

The ALJ pointed out from the medical records made by Dr. Phoha that Ms. Meherg was able to manage her depression, despite being in the borderline range of severe, because of her high IQ. (Tr. 26). The ALJ also focused on Dr. Atkins's testimony that Ms. Meherg was clear and coherent during most of their counseling sessions. *Id.* Yet, he failed to discuss the fact that Dr. Atkins was supportive of Ms.

Meherg's decision to apply for social security due to her mental and other health issues. (Tr. 309). Also, the ALJ minimized Dr. Phoha's medical opinion that the claimant had poor memory, difficulty in concentration, and difficulty controlling her emotions because it conflicted with Dr. Nuckols's mental RFC assessment. *Id.* Then, the ALJ ignored the diagnosis by Dr. Phoha that Ms. Meherg has a "tendency to hurt herself" and "should be closely observed to avoid any future suicide attempt." (Tr. 437). Finally, the ALJ refers to Ms. Meherg's gap in treatment stating, "This evidence is contrary to the claimant's allegations regarding the intensity and persistence of her symptoms. For this reason, more weight has been given to Dr. Nuckols's opinion, regarding the claimant's memory and concentration, as it is more consistent with the medical evidence of record and is supportive of the RFC assessment detailed above." (Tr. 26). The ALJ claims Dr. Nuckols's medical opinion is more consistent with the medical evidence of the record but fails to discuss any persuasive evidence of the record that contradicts the testimony of Ms. Meherg's treating phsyicans. In addition, the ALJ failed to present substantial evidence to withhold deference from the medical opinions of the two treating physicians mentioned above. Therefore, due to the improper weight afforded to the consultative and singular examination by Dr. Nuckols, this court finds the ALJ's decision to subordinate the testimony of Ms. Meherg's treating physicians is not supported by

good cause, and the case is due to be remanded.

**D.** **The ALJ Failed To Consider A Comprehensive Hypothetical Question Posed To The Vocational Expert.**[9]

The ALJ posed three hypothetical questions to the vocational expert at the hearing. The first question assumed a person with "an ability to remember, understand, and carry out simple instructions, maintain attention and concentration for two hours in an eight hour work day, require casual contact with the general public and coworkers, and needs non-confrontational criticism and gradual change in the work setting." (Tr. 71). The vocational expert concluded a person with that residual functional capacity would not be able to perform Ms. Meherg's past work but identified jobs in significant numbers in the national economy for such a person. (Tr. 71-72). The second hypothetical assumed the same facts as were determined in the ALJ's opinion to be Ms. Meherg's residual functional capacity, and the VE testified that there would be jobs in significant numbers for such a person if limited to less than the full range of sedentary work. (Tr. 73). Finally, the ALJ added in the third hypothetical that the person "would not be able to maintain attention and concentration for two hours periods due to combination of racing thoughts and/or headaches, as well as individual would likely miss two to three days per month as a

---

[9]The following analysis and disposition flow from the undersigned's opinion in *Rose v. Astrue*, No. 1:11-CV-01186-VEH (Doc. 10 at 20-21) (N.D. Ala. Nov. 1, 2011).

result of either physical pain or secondary episodes of depression or mania," and the VE testified that such a person would *not* be able to work in the national economy. (Tr. 74).

In order for the vocational expert testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which contains all of the claimant's impairments. *Vega v. Comm. of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 1996). In his opinion, the ALJ clearly relied on the second hypothetical situation posed. (Tr. 24-25). Yet, the only hypothetical that, at least, mentioned all of Ms. Meherg's symptoms was the final hypothetical which the ALJ clearly disregarded. Based on this court's finding that the ALJ erroneously discredited Ms. Meherg's subjective pain testimony, and given that the second hypothetical incorporated the ALJ's negative credibility finding, this court finds the ALJ did not pose a comprehensive hypothetical question to the vocational expert and remand is appropriate.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence and failed to apply the proper legal standards. Accordingly, the decision of the Commissioner will be reversed and remanded for further development of the record by separate order.

21

**DONE** and **ORDERED** this the 23rd day of February, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge